UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA        *       Case No. 14-CR-316 (JBW)
                                *
                                *       Brooklyn, New York
                                *       August 26, 2014
        v.                      *
                                *
RAUL VASQUEZ,                   *
                                *
            Defendant.          *
                                *
*  *  *  *  *  *  *  *  *  *  *  *  *  *

            TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
              BEFORE THE HONORABLE STEVEN M. GOLD
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:             PETER W. BALDWIN, ESQ.
                                Asst. United States Attorney
                                United States Attorney's Office
                                271 Cadman Plaza
                                Brooklyn, NY 11201


For the Defendant:              LEN H. KAMDANG, ESQ.
                                Federal Defenders of
                                  New York, Inc.
                                One Pierrepont Plaza, 16th Fl.
                                New York, NY  11201




Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

1          (Proceedings commenced at 10:12 a.m.)

2                THE COURT:  That means if you lie to me in this

3     courtroom today, the prosecutor could bring new criminal

4     charges against you just for that.  Do you understand?

5                THE DEFENDANT:  Yes.

6                THE COURT:  Tell me your full name.

7                THE DEFENDANT:  Raul Vasquez.

8                THE COURT:  How old are you, Mr. Vasquez?

9                THE DEFENDANT:  52.

10               THE COURT:  How far did you go in school?

11               THE DEFENDANT:  Around eighth, ninth grade.

12    Around.

13               THE COURT:  Was that in the United States?

14               THE DEFENDANT:  Yes.

15               THE COURT:  Is English your native language?

16               THE DEFENDANT:  Spanish.

17               THE COURT:  Do you feel fluent in English?

18               THE DEFENDANT:  Somewhat.  Yes.

19               THE COURT:  Are you understanding me without any

20    problem?

21               THE DEFENDANT:  Yes.

22               THE COURT:  Would you be more comfortable if you

23    had a Spanish interpreter?

24               THE DEFENDANT:  No.

25               THE COURT:  Mr. Kamdang, have you had any

3

1    difficulty communicating with your client in the English

2    language?

3              MR. KAMDANG:  No, Your Honor.  I've had all of my

4    conversations with Mr. Vasquez in English and I believe that

5    language is not a concern here.

6              THE COURT:  Thank you.

7              Mr. Vasquez, are you now or have you in the recent

8    past been seeing a doctor, psychologist or other health care

9    professional for any physical, mental or emotional problems?

10        (Pause.)

11             THE COURT:  Are you getting any medical treatment

12   for any kind of physical, mental or emotional problems?

13             THE DEFENDANT:  Yes.

14             THE COURT:  What are you being treated for?

15             THE DEFENDANT:  Now being treated?

16             THE COURT:  Yes.

17             THE DEFENDANT:  Now?  Am I --

18             MR. KAMDANG:  One moment, Your Honor.

19        (Counsel and the defendant confer.)

20             MR. KAMDANG:  Your Honor, the confusion is Mr.

21   Vasquez is awaiting a referral from Pre-Trial Services for

22   therapy related to these charges.

23             THE COURT:  I understand.

24             MR. KAMDANG:  He hasn't received that referral yet,

25   so he's not receiving any medical treatment right now.  He's

4

1  been evaluated and that report has been turned over to the

2  government and the Court, so to that extent he has recently

3  seen --

4            THE COURT:  Okay.

5            MR. KAMDANG:  -- a professional but he didn't start

6  the therapy yet.

7            THE COURT:  Okay.  So putting aside any mental

8  health treatment connected to the charges you're facing, have

9  you been receiving any medical care for any other problem

10  over the last couple of months?

11            THE DEFENDANT:  No.

12            THE COURT:  In the last 24 hours, have you taken

13  any narcotics, drugs, medicine, pills or alcohol?

14            THE DEFENDANT:  No.

15            THE COURT:  Have you ever been hospitalized or

16  treated for alcohol or drug abuse or psychiatric problems?

17            THE DEFENDANT:  Many years ago.

18            THE COURT:  What were you treated for?

19            THE DEFENDANT:  Drugs.

20            THE COURT:  Have you been sober and clean for at

21  least the last three or four months?

22            THE DEFENDANT:  Yes.

23            THE COURT:  Is your mind clear today?

24            THE DEFENDANT:  Yes.

25            THE COURT:  Do you feel healthy, focused and alert?

```
1              THE DEFENDANT:  Yes.

2              THE COURT:  Do you understand everything that's

3    happening in this courtroom so far?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Okay.  Mr. Kamdang, have you reviewed

6    the matter of pleading guilty carefully with your client?

7              MR. KAMDANG:  Yes, Your Honor.

8              THE COURT:  Does he understand the rights he'll be

9    waiving if he tenders a guilty plea?

10             MR. KAMDANG:  Yes.

11             THE COURT:  Is he capable of understanding the

12   nature of this proceeding?

13             MR. KAMDANG:  Yes.

14             THE COURT:  Do you have any doubt about his

15   competence to tender a guilty plea at this time?

16             MR. KAMDANG:  No, Your Honor.

17             THE COURT:  Have you alerted your client to the

18   maximum and I guess minimum sentence and fine that can be

19   imposed and discussed with him both the likely operation of

20   the sentencing guidelines as best you can anticipate it and

21   the anticipated collateral consequences of conviction?

22             MR. KAMDANG:  Yes, Your Honor.

23             THE COURT:  Mr. Vasquez, have you had enough time

24   to go over everything about your case with Mr. Kamdang?

25             THE DEFENDANT:  Yes.
```

6

1          THE COURT:  Have you actually sat down with him and

2    reviewed everything that's of concern to you?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Are you satisfied to have Mr. Kamdang

5    be the criminal defense lawyer representing you?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Have you received a copy of the

8    indictment where the charges against you are set forth?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Have you read that indictment and

11   reviewed it carefully with Mr. Kamdang?

12         THE DEFENDANT:  Yes.

13         THE COURT:  You are charged in that indictment with

14   various crimes involving child pornography.  In Count 5 which

15   is the count that is the subject of your plea agreement, you

16   are accused of knowingly and intentionally possessing images

17   of child pornography on or about May 2nd, 2014 which images

18   were mailed, shipped or transported in interstate or foreign

19   commerce.  Do you understand what you're accused of in

20   Count 5?

21         THE DEFENDANT:  Yes.

22         THE COURT:  You have a right to plead not guilty to

23   all of the charges in the indictment, whether you are guilty

24   of any of them or not.  You also have the right to persist in

25   any not guilty plea you've previously entered in the case.

7

1    You have that right even if you committed these crimes.  It's

2    never lying or misleading the Court to plead not guilty.

3    Every defendant has the right to plead not guilty.  It is the

4    way a defendant exercises his Constitutional right to a

5    trial.  Is this clear to you?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  If you persist in your previously

8    entered not guilty pleas or plead not guilty today, then

9    under the Constitution and laws of the United States, you're

10   entitled to a speedy and public trial by jury with the

11   assistance of your attorney at all stages of the case, not

12   only at the trial and on all charges pending against you.  Is

13   that clear?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  At your trial, you would be presumed to

16   be innocent.  The prosecution would be required to overcome

17   this presumption of innocence and to prove that you were

18   guilty by competent evidence and beyond a reasonable doubt.

19   You would have no obligation to prove that you were innocent.

20             If the prosecution failed to prove that you were

21   guilty beyond a reasonable doubt, the members of the jury

22   would have the duty to return a verdict of not guilty and

23   acquit you, and Judge Weinstein would instruct them that way.

24   Is that clear to you?

25             THE DEFENDANT:  Yes.

8

1          THE COURT:  That's why sometimes juries return not

2     guilty verdicts that acquit the defendant, even when the

3     jurors believe he probably did commit the crimes of which

4     he's accused.

5          That's because when a jury finds a defendant not

6     guilty and acquits him, the jurors aren't necessarily saying,

7     we believe the defendant is innocent.  They're only saying,

8     we're not convinced beyond a reasonable doubt of his guilt.

9     Do you understand that difference?

10         THE DEFENDANT:  Yes.

11         THE COURT:  If you proceeded to trial, the

12    prosecutor's witnesses would be required to come into the

13    courtroom and to present their testimony against you right in

14    front of you and your lawyer.

15         Your lawyer would have the right to question the

16    prosecution witnesses on cross-examination.  Your lawyer

17    would have the right to raise objections to the evidence the

18    prosecution attempted to offer against you.

19         And you and your lawyer, working together, would

20    have the right to call witnesses, present evidence other than

21    testimony and make arguments to the jury in your defense

22    during the course of your trial.  You could even issue

23    subpoenas that would compel people who might help your case

24    to come to court and testify.

25         Do you understand all of that?

9

1              THE DEFENDANT:  Yes, sir.

2              THE COURT:  At your trial, you yourself would have

3       the right to testify as a witness in your own defense if that

4       was the choice that you made.  On the other hand, no one

5       could make you testify at your trial against your will.

6          That's because the Constitution of the United States

7       says that no one may be required to say anything that is

8       self-incriminating.

9              If you decided that you preferred not to testify as

10      a witness in your own defense, Judge Weinstein would instruct

11      the jurors that they could not take your silence at trial

12      into account or hold it against you in any way when they

13      decided what their verdict should be.  Is this clear to you?

14             THE DEFENDANT:  Yes.

15             THE COURT:  On the other hand, if you offer a

16      guilty plea and Judge Weinstein accepts it, you will be

17      surrendering your Constitutional right to trial and all of

18      the other rights that I've been describing to you today.

19          There will be no further trial of any kind in your case.

20      You will have no right to appeal from the judgment of guilty

21      that will follow.

22             Judge Weinstein will essentially convict you, find

23      you guilty, based upon what you admit in my courtroom this

24      morning.  That will free the prosecutor of any responsibility

25      to prove what you did.  Is that clear to you?

1          THE DEFENDANT:  Yes.

2          THE COURT:  If you proceeded to trial and you were

3     convicted by the verdict of a jury, you would then have a

4     right to take an appeal from your conviction to a higher

5     court called the Court of Appeals and ask that the legality

6     of all of the proceedings leading up to your conviction be

7     reviewed.

8          But when you plead guilty, your conviction is based

9     upon what you yourself decided to say.  And under that

10    circumstance, there's no right to appeal from the conviction

11    that follows.  Is that clear?

12         THE DEFENDANT:  Yes.

13         THE COURT:  If you plead guilty, I'm going to have

14    to ask you questions about what you did and what you

15    understood about what you were doing so that Judge Weinstein

16    and I can be satisfied that your plea of guilty is based upon

17    facts that actually took place.

18         You don't have to answer those questions unless you

19    want to proceed with your guilty plea.  If you do answer them

20    though, you will be surrendering your right not to say

21    anything self-incriminating.  Is this clear to you?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Do you still want to give up your right

24    to trial and all the other rights I've been talking to you

25    about this morning?

1          THE DEFENDANT:  Yes.

2          THE COURT:  I understand you're making this

3     decision pursuant to a written plea agreement with the

4     prosecution.  I've had that agreement marked as Court's

5     Exhibit 1 and I will ask my clerk to show it to you now.

6          (Pause.)

7          THE COURT:  Directing your attention to Court

8     Exhibit 1, do you recognize this document and does your

9     signature appear on its last page?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Before you signed it, did you read it?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Are you able to read?  I know you only

14     went to the eighth grade.  That's why I'm asking you.

15          THE DEFENDANT:  Yes.

16          THE COURT:  And did you go over it very carefully

17     with Mr. Kamdang?

18          THE DEFENDANT:  Yes, I did.

19          THE COURT:  Did you understand what you signed?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Do you have any questions you would

22     like to ask me or go over with Mr. Kamdang in private about

23     anything in your plea agreement?

24          THE DEFENDANT:  No.

25          THE COURT:  Everything in it is clear to you?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Does that written document, Court

3    Exhibit 1, your plea agreement, does that document contain a

4    complete and accurate statement of everything that you and

5    the prosecutor have agreed to about your case?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Has anyone promised you anything --

8          THE DEFENDANT:  No.

9          THE COURT:  -- in return for pleading guilty --

10   well, they have, so don't say no so fast, right?  You're

11   pleading guilty to one charge and you're not being prosecuted

12   on others.  At least that much has been promised to you,

13   correct?

14         THE DEFENDANT:  Yes.

15         THE COURT:  So that's the kind of thing I mean.

16   Has anyone promised you anything that is not written down in

17   the agreement in return for your guilty plea?

18         THE DEFENDANT:  No.

19         THE COURT:  May I have it back, please, Mr.

20   Kamdang?

21      (Pause.)

22         THE COURT:  Now Mr. Vasquez, as we've been

23   discussing, the plea agreement anticipates that you will wish

24   to plead guilty to Count 5 of the indictment where you're

25   charged with knowingly and intentionally possessing child

1    pornography on or about May 2nd, 2014.  Do you have that

2    charge clearly in your mind?

3              THE DEFENDANT:  Yes.

4              THE COURT:  I need to review with you now the

5    penalties you will face if you go forward with a plea of

6    guilty to that charge.  The sentence you could receive could

7    be as long as ten years of imprisonment.  Is that clear?

8              THE DEFENDANT:  Yes.

9              THE COURT:  In addition to a term of imprisonment,

10   you are subject to a term of supervised release that must be

11   at least five years long and could be as long as the rest of

12   your life.  Do you understand?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Let me ask the government.  There's a

15   reference here to three years of incarceration for a

16   violation of supervised release.  I understand that the

17   supervised release term in terms of its length is different

18   than that which would otherwise apply, but I could not find a

19   citation that indicates that the sanction for violation is

20   longer than would otherwise apply.  Can you direct me to it,

21   please?  Because for a ten-year felony, ordinarily it would

22   be a two-year term of incarceration.

23             MR. BALDWIN:  You know, Your Honor, I can't at this

24   time and I apologize for that.

25             THE COURT:  Do you know if it's correct as written,

1   or if it's inaccurate?

2          MR. BALDWIN:  I don't, but if the Court has a copy

3   of the statute book, I can quickly take a look and see if

4   it's in the statute and if not, then the Court I'm sure is

5   likely correct, and it may just be a typographical error.

6   But I ask the Court's indulgence just for two minutes while I

7   look at the statute.

8          THE COURT:  Mr. Kamdang, do you happen to know the

9   answer?

10         MR. KAMDANG:  Your Honor, I haven't -- I haven't

11  looked at it in a while, but I seem to recall that it is --

12  the penalty was three years.  But I can't -- I don't have the

13  code book.  I'll join Mr. Baldwin.

14         THE COURT:  It may well be in there.  I, frankly,

15  was unfamiliar with the five-to-life provision, so I'm not

16  sure.  I know that there is a harsher penalty for new

17  criminal conduct, but assuming non-criminal violation of

18  supervised release, is he subject up to two or up to three

19  years of incarceration?

20      (Pause.)

21         THE COURT:  Citations in the plea agreement are

22  available to you there.  That's how I found the -- I think it

23  was (k).  I think it has the special provisions -- 3583(k).

24         MR. BALDWIN:  Yes, Your Honor.  And I -- you are

25  correct.  There is no specific reference in that statute or

1    that particular subsection to an additional or to a lengthier

2    period of supervised release.

3              THE COURT:  No -- to a lengthier period of

4    incarceration for violating supervised release in a non-

5    criminal matter.  Right?

6              MR. BALDWIN:  Excuse me, Your Honor.  Yes.  That's

7    correct.

8              THE COURT:  Okay.

9         (Pause.)

10             THE COURT:  I think the prudent thing to do under

11   the circumstances, if I may make the suggestion, I'll warn

12   him about three.

13             I'll ask counsel to follow up and submit a

14   stipulation before the date of sentencing amending the plea

15   agreement if my reading of the statute turns out to be

16   accurate, so that in this man's future no one mistakenly

17   incarcerates him for longer than the statute permits for

18   supervision release violation.

19             MR. BALDWIN:  I think that seems prudent, Your

20   Honor, and I will coordinate with Mr. Kamdang.  I'll get a

21   citation and we'll alert the Court if we find something that

22   does actually say that it's three years just so that

23   everybody's on the same page.

24             THE COURT:  Thank you, counsel.  All right.  Now of

25   course I've completely lost my place, so I'm probably going

1    to have to travel some ground first that I've already

2    covered.

3            Mr. Vasquez, I'm sure that today is a serious

4    enough day in your life that a distraction over a legal

5    technicality is unwelcome.  I apologize.  Let me refocus your

6    attention on the penalties you face if you're convicted upon

7    your plea of guilty.  The maximum term of imprisonment for

8    Count 5 is ten years.  I've already told you that, right?

9            THE DEFENDANT:  Yes.

10           THE COURT  And you understand?

11           THE DEFENDANT:  Yes.

12           THE COURT:  You will then be subject to a term of

13   supervised release that will be at least five years long and

14   could be as long as the rest of your life.

15           Supervised release is a period of time -- five

16   years to life -- that won't even begin to run until you

17   finish serving whatever prison sentence Judge Weinstein

18   imposes upon you.

19           Once you finish your prison term, assuming you

20   receive one, you'll be released from physical custody --

21   you'll be released from prison -- but you won't really be at

22   liberty because you'll be subject to the rules of supervised

23   release.

24           The rules you'll have to follow while on supervised

25   release will be so many in number that I couldn't even list

1    them all for you today.  They will include restrictions on

2    your right to travel freely, requirements that you regularly

3    report to a Probation Officer, you'll have to answer your

4    officer's questions honestly, you'll have to follow your

5    officer's instructions carefully, and you'll be prohibited

6    from committing any new crimes whatsoever.  Given the nature

7    of your offense, I expect that there will be additional

8    requirements such as mental health treatment and places you

9    will and will not be allowed to go, and registration

10   requirements that may apply in your case as well.

11        If you break any supervised release rule, you could

12   be arrested, returned to court and sent back to prison on

13   this possession of child pornography charge, even though you

14   finished serving your original sentence because now you

15   violated your supervised release term.

16        If your violation involves new criminal activity,

17   you could be sent back to prison for up to five years.  If

18   your violation is non-criminal, say you didn't report to your

19   Probation Officer, or you traveled someplace that your

20   Probation Officer didn't know about in advance, even though

21   you were supposed to tell him or her, then you could be still

22   be sent back to prison, but not for as long.  It would either

23   be for two or three years.

24        That's the debate we've just been having, and that

25   will be clarified by the attorneys between now and the time

18

1    you're sentenced.  I'm sorry that was so long.  Did you stay

2    with me and understand everything I've said?

3              THE DEFENDANT:  Yes.

4              THE COURT:  In addition, you could be fined as much

5    as $250,000.  Is that clear?

6              THE DEFENDANT:  Yes.

7              THE COURT:  You will be required to pay

8    restitution.

9         (Pause.)

10             THE COURT:  And an order compensating the victim of

11   your crime will be entered as part of your sentence in

12   requiring you to pay that amount.  Is that clear?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Your plea agreement requires you to

15   identify certain assets that have a value of more than

16   $5,000.  Is that clear?

17             THE DEFENDANT:  Yes.

18             THE COURT:  You will be required to make a $100

19   special assessment payment at or about the time you're

20   sentenced.  Is that clear?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Did I already say you could be fined as

23   much as $250,000?  I think I did.

24             MR. KAMDANG:  Yes, Your Honor.

25             THE COURT:  You will be required to register as a

1    sex offender.  Do you understand that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  And there'll be a lot of rules and

4    regulations you're going to have to follow.  They change from

5    time to time.  You'll have to keep up with them.  Is that

6    clear to you?

7              THE DEFENDANT:  Yes.

8              THE COURT:  And there's a criminal forfeiture

9    provision in your agreement as well.  I take it that's the

10   visual depiction contraband?

11             MR. BALDWIN:  Yes, Your Honor.

12             THE COURT:  So you'll have to surrender to the

13   government any additional images you have, which may include

14   devices that -- on which those images are stored.  Do you

15   understand that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Is it the government's information that

18   Mr. Vasquez is a citizen of the United States?

19             MR. BALDWIN:  It is, Your Honor.

20             THE COURT:  Thank you.  Now that we reviewed all of

21   the statutory penalties with Mr. Vasquez, I want to talk to

22   you about we call the Sentencing Commission Guidelines.

23        These guidelines will be calculated by Judge Weinstein

24   and they will provide him with a range of months within which

25   the law will urge an appropriate sentence for your case

1        should be set.

2                Have you had a chance to discuss these guidelines

3        with your lawyer and obtained his advise about how they're

4        likely to be applied to your case?

5                THE DEFENDANT:  Yes.

6                THE COURT:  Your plea agreement says that the

7        government has calculated your guideline range to be 57 to 71

8        months long.  I'm assuming that the August 21st date has been

9        extended by stipulation?

10               MR. KAMDANG:  Yes, Your Honor.

11               THE COURT:  And that the defendant qualifies for

12       that additional reduction?

13               MR. BALDWIN:  Yes, Your Honor.  I have modified

14       that with just a notation in the plea agreement.  I initialed

15       it.  I'm not positive that defense counsel and the defendant

16       also initialed it.

17               THE COURT:  Oh, you know what?  I'm looking at my

18       copy because it had some notes.  But yes.  It appears

19       everybody's initialed it.

20               MR. BALDWIN:  Thank you, Your Honor.

21               THE COURT:  Okay.  Are these yours?  Maybe not.

22               MR. KAMDANG:  I initialed.  Mr. Vasquez did not.

23               THE COURT:  All right.

24               MR. KAMDANG:  If Your Honor --

25               THE COURT:  Would you like Mr. Vasquez to initial

1    it as well?  It couldn't hurt.

2            MR. KAMDANG:  Why not, Your Honor?

3            THE COURT:  Let's get him to do that.  It's an

4    ounce of prevention.

5         (Pause.)

6            THE COURT:  Thank you.

7            So as I was saying, Mr. Vasquez, the government has

8    calculated that guideline range to be 57 to 71 months long

9    and by the terms of your plea agreement, you have agreed not

10   to challenge that calculation.  Are you with me so far?

11           THE DEFENDANT:  Yes.

12           THE COURT:  The final decision about what the

13   guideline range should be, though, is up to Judge Weinstein.

14   And the Judge is not going to make that calculation until he

15   receives something we call a Pre-Sentence Report and that

16   report hasn't even been written yet.

17           Once the report is ready, you and your lawyer and

18   the prosecutor will all be allowed to read it.  You will then

19   have an opportunity to appear before Judge Weinstein.

20           At that time, you will have a chance to speak, as

21   will your attorney.  You may then tell Judge Weinstein if

22   there is anything in the report that you think is inaccurate

23   and only then will Judge Weinstein make the final calculation

24   of the guideline range that applies to your case.

25           He may well decide that the right guideline range

22

1   is 57 to 71 months, as predicted by the prosecutor, but he

2   might also decide that an even longer or shorter guideline

3   range is the one that should apply to your case.  Are you

4   with me so far?

5             THE DEFENDANT:  Yes.

6             THE COURT:  Even after the Judge calculates your

7   guidelines, he will be required under the Federal Criminal

8   Laws to look at additional factors concerning your case and

9   to take those into account before he decides upon the final

10   sentence.  He may therefore decide to impose a sentence

11   either longer or shorter than the guidelines.  Is that clear

12   to you?

13             THE DEFENDANT:  Yes.

14             THE COURT:  If you receive a prison sentence of 78

15   months or less, you will have no right to challenge any

16   aspect of your conviction or sentence.

17             Even if you are sentenced to prison for longer than

18   78 months, you will have no right to withdraw your guilty

19   plea or challenge your conviction on that basis.  The only

20   right you would have under that circumstances would be to

21   raise a challenge to the length of the sentence that Judge

22   Weinstein imposed upon you.  Is that clear?

23             THE DEFENDANT:  Yes.

24             THE COURT:  You may have heard of parole, a program

25   of early release from a prison sentence.  But there's no

1    parole in federal court like this, only in some state courts

2    so you will not be released early from any prison sentence

3    Judge Weinstein imposes on parole.  Is that clear to you?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Do you have any questions you would

6    like to ask me about the charges against you, the rights

7    you're being asked to surrender, the penalties you're facing,

8    the guidelines, or anything else concerning your case?

9              THE DEFENDANT:  No, Your Honor.

10             THE COURT:  Would you like to discuss anything

11   privately with your lawyer?

12             THE DEFENDANT:  No.

13             THE COURT:  Is everything I've told you today

14   clear?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Are you ready to enter your plea?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Mr. Kamdang, do you know of any reason

19   why your client should not tender the guilty plea anticipated

20   by his agreement?

21             MR. KAMDANG:  No, Your Honor.

22             THE COURT:  Mr. Vasquez, with respect to Count 5 of

23   the indictment in which you are accused with knowingly and

24   intentionally -- knowing and intentional possession of child

25   pornography on May 2nd, 2014, what did you do -- how do you

24

1    plead; guilty or not guilty?

2              THE DEFENDANT:  Guilty.

3              THE COURT:  Are you pleading guilty voluntarily and

4    of your own free will?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Have you been threatened or forced to

7    make this guilty plea?

8              THE DEFENDANT:  No.

9              THE COURT:  Other than what's written in your

10   agreement with the prosecution, have you been promised

11   anything that's causing you to plead guilty?

12             THE DEFENDANT:  No.

13             THE COURT:  Have you been promised what sentence

14   Judge Weinstein's going to set?

15             THE DEFENDANT:  Excuse me.  Could you --

16             THE COURT:  Did anybody promise you what particular

17   sentence you're going to get from Judge Weinstein?

18             THE DEFENDANT:  No.

19             THE COURT:  What did you do that makes you guilty

20   of this offense?

21             THE DEFENDANT:  On or about May 2nd, I -- I

22   downloaded some -- knowingly downloaded some -- what do you

23   call it?  Child pornography.

24             THE COURT:  Okay.  Where were you on May 2nd when

25   you did this?

25

1              THE DEFENDANT:  Where was I?

2              THE COURT:  Yes.

3              THE DEFENDANT:  I was home.

4              THE COURT:  Where do you live?  What town?

5              THE DEFENDANT:  In Brooklyn.

6              THE COURT:  And when you say May 2nd, you're

7      talking about May 2nd, 2014?  I mean, it was this year?  This

8      past May?  Not earlier than that?  Or was it another year?

9              THE DEFENDANT:  Yes.

10             THE COURT:  I'm just asking if it was 2014 or not.

11             THE DEFENDANT:  Yes.

12             THE COURT:  Yes.  So you were at home on May 2nd,

13     2014, right?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Were you using a computer?  Is that

16     when you say downloaded what you mean?

17             THE DEFENDANT:  Yes.  Yes.

18             THE COURT:  And -- and while you -- you were on the

19     Internet?

20             THE DEFENDANT:  Yes.

21             THE COURT:  You were using the Internet?  And you

22     visited a site where you found some images?

23             THE DEFENDANT:  Right.

24             THE COURT:  And you say these images were

25     downloaded by you?

26

1          THE DEFENDANT:  Yes.

2          THE COURT:  Were these images of child pornography?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Did you know that they were child

5     pornography when you downloaded them?

6          THE DEFENDANT:  Yes.

7          THE COURT:  What would the government's proof be

8     that to satisfy the elements that the images were, in fact,

9     child pornography and that the interstate and foreign

10    commerce aspects of the statute have been met as well if the

11    case were to go to trial?

12         MR. BALDWIN:  Your Honor, if the case were to go to

13    trial, the government would introduce both the computers and

14    other digital devices that were seized from the defendant's

15    possession pursuant to a search warrant that was issued prior

16    to May 2nd.

17         There would be testimony from a forensic analyst

18    with Homeland Security who would be able to testify about

19    locating the particular images on those digital devices as

20    well as how those digital device -- or how those images came

21    to be on the defendant's devices.

22         In addition, there -- the government would likely

23    simply show the images to the jury.  The government believes

24    that the particular images at issue in this case, there would

25    be no need for expert testimony to show that they are, in

1    fact, minors so the government would simply show the images

2    to prove that the images are, in fact, children, and I think

3    that would be it, Your Honor.

4              THE COURT:  What about the interstate commerce?

5              MR. BALDWIN:  Your Honor, I believe under the law

6    the fact that the devices -- or that the images came from the

7    Internet would be sufficient to satisfy the interstate nexus

8    requirement.

9              However, if necessary, the government could also

10   show or bring in either one of two things, Your Honor.

11   Either bring in a witness who may know one of the victims

12   that is in an image saved on the defendant's devices who

13   could testify that, in fact, that victim had these images

14   taken in another state.

15             Alternatively, the government could show that the

16   devices used to produce the images traveled in interstate

17   commerce as well.

18             THE COURT:  There's a reference here, I believe, to

19   the fact that the visual depiction is of an actual

20   individual.  How would the government prove that and has

21   victim notification been made?

22             MR. BALDWIN:  Your Honor, with respect to your --

23   the second part of your question on victim notification, the

24   case agent has notified NCMEC, or the Center for Missing and

25   Exploited Children, and is in the process of trying to match

1    any images that were found on the device to known images.  Of

2    course, the government will follow the requirements under the

3    law regarding victim notification if and when any known

4    victims are identified.

5         With respect to real children, to the extent that

6    there is a match to a real child, the government could

7    obviously satisfy the requirement of the real child by,

8    again, bringing in a witness who knew the child or

9    interviewed the child that is depicted in the image.

10        To the extent there are no known children, the

11   government could also call an expert to be able to testify

12   that the images that are saved on this device in question are

13   not digitally made -- in fact, do depict live human

14   individuals.

15        THE COURT:  Now I haven't taken any pleas under

16   this statute.  Is it appropriate to have the precise nature

17   of the video and how it's -- and the activity that takes

18   place on it spread on the record so that the defendant

19   acknowledges that?

20        MR. BALDWIN:  Your Honor, I don't know that it's

21   necessary.

22        However, as we have -- as the government has in

23   Count 5 specifically charged that certain of the images

24   involved pre-pubescent or --

25        THE COURT:  Uh-huh.

1          MR. BALDWIN:  -- individuals who have not attained

2     the age of 12, I would prefer that it be on the record.

3          However, if the defendant's not prepared to --

4               THE COURT:  Well, have you seen the video?

5               MR. BALDWIN:  I have not, but I have had it on

6     representation from the case agent who has viewed all --

7               THE COURT:  So why don't you describe what's seen

8     on the video?

9               MR. BALDWIN:  Certainly, Your Honor.  If I could

10    just have --

11              THE COURT:  Take a moment.

12              MR. BALDWIN:  -- make a reference here.  There are

13    several videos and images that are on the device that has

14    been charged, a thumb drive, Your Honor.  I can show or just

15    describe one or two of them.

16              THE COURT:  That would be fine.

17              MR. BALDWIN:  And again, this is based on

18    representations made to me by the case agent and also made

19    under oath in the affidavit of the search warrant and the

20    complaint in this case.

21              There is a picture on the device showing a pre-

22    pubescent girl exposing her vagina and buttocks to the camera

23    and an adult male is seen penetrating the girl's anus.

24              There is a video of approximately one minute and 17

25    seconds depicting an adult male penetrating a nude pre-

1    pubescent girl's vagina and the girl later performs oral sex

2    on the adult male.  I believe that's probably sufficient,

3    Your Honor.

4              THE COURT:  Yes.  One other question, at least that

5    I could think of right now.  I believe you said that the

6    agents executed a search warrant that was issued before

7    May 2nd, 2014.  Of course the count charges May 2nd, 2014.

8              Was the search warrant executed before May 2nd,

9    2014?

10             MR. BALDWIN:  It was executed on May 2nd.  I

11   believe the search warrant was signed on May 1st, Your Honor.

12             THE COURT:  Okay.  Hence, the date in Count 5?

13             MR. BALDWIN:  Yes, Your Honor.

14             THE COURT:  Thank you.  Mr. Vasquez, did you hear

15   and follow everything the prosecutor just told me?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Did you, in fact -- did you view the

18   images that you downloaded?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Did you look at them?  Did the

21   prosecutor accurately describe what some of the images

22   showed?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Was it your intention to download

25   images of that type?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Did you -- you knew what you were

3    downloading?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Anything further?

6          MR. BALDWIN:  No, I think that's sufficient, Your

7    Honor.

8          THE COURT:  Based on the information given to me, I

9    find that the defendant, Raul Vasquez, is acting voluntarily

10   and that he fully understands his rights and the consequences

11   of his plea.  I further find that his plea has a factual

12   basis.  I therefore recommend that Judge Weinstein accepts

13   the defendant's plea of guilty to Count 5.

14          I have a sentencing date from Judge Weinstein's

15   chambers of December 10th at 10 a.m.  Mr. Vasquez, between

16   now and December 10th, you're going to be interviewed by a

17   Probation Officer.  The reason for the interview will be to

18   help that officer prepare that pre-sentence report I told you

19   about earlier this morning.

20          It's therefore very important that you come to that

21   meeting prepared to be candid and forthcoming so that the

22   report is as complete and accurate as possible.  Is there

23   anything further for my attention?

24          MR. BALDWIN:  No.

25          THE COURT:  Bail continued?

1          MR. BALDWIN:  Yes, Your Honor.

2          THE COURT:  So ordered.  Have a good day,

3     everybody.

4          MR. BALDWIN:  Thank you, Your Honor.

5          MR. KAMDANG:  Thank you, Your Honor.

6          THE COURT:  I have paperwork here.

7       (Proceedings concluded at 10:46 a.m.)

8       I, CHRISTINE FIORE, court-approved transcriber and

9     certified electronic reporter and transcriber, certify that

10    the foregoing is a correct transcript from the official

11    electronic sound recording of the proceedings in the above-

12    entitled matter.

13

14    *Christine Fiore*

15    _____        September 20, 2014

16       Christine Fiore, CERT

17

18

19

20

21

22

23

24